UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:14-CR-25-GFVT-HAI-12 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| WILLIAM HENRY BROCK, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 1090), the Court considers reported violations of supervised release conditions by Defendant William Henry Brock.

Judge Van Tatenhove entered a judgment against Defendant in November 2015 after he pleaded guilty to one count of conspiracy to distribute methamphetamine (21 U.S.C. §§ 841(a)(1), 846). D.E. 791. He was sentenced to 87 months of imprisonment and eight years of supervised release. *Id*. at 2-3. Defendant was released from custody on November 9, 2020.

**I.**

On July 16, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges four violations.

According to the Report, on June 24, the probation officer traveled to Defendant's reported address and found that Defendant had recently moved out. The officer phoned Defendant. Defendant confirmed he had moved, said he had also lost his job, and said he was currently living in a hotel with his girlfriend, a Ms. VanWinkle. The next day, Defendant

reported to the Probation Office as instructed. A urine screen yielded positive instant results for fentanyl. "Mr. Brock denied any illicit drug use, but provided an explanation that the fentanyl may have come from the passing of a dollar bill, or something else he had touched that Ms. VanWinkle had come into contact with." Defendant said he had seen his girlfriend use heroin. The officer instructed Defendant to cease contact with VanWinkle because "she is a drug user, and therefore engaged in criminal activity." On July 6, the lab confirmed positive fentanyl results on the June 25 urine sample.

Defendant was given a second drug screen on June 29, with negative results. A third drug screen was administered on July 15, which yielded positive instant results for fentanyl. "When questioned, Mr. Brock maintained he had not been 'high.'" Lab results were pending at the time of the Report.

Based on the June 25 drug screen, Violation #1 of the Report charges a Grade C violation of the condition that requires Defendant to refrain from using any controlled substance except as prescribed by a physician.

Also based on the June 25 drug screen, Violation #2 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's fentanyl use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Violation #3 charges a Grade C violation of the condition that Defendant not associate with any persons engaged in criminal activity absent permission from the probation officer. This violation is based on his association with Ms. VanWinkle, whom Defendant described as "a drug user" whom he had seen using heroin in his presence.

Violation #4 charges a Grade C violation of the condition that Defendant "shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." According to the Report,

> on July 14, 2021, the undersigned contacted Mr. Brock by telephone, at which time the defendant advised he was presently en route to go pick up Andrea VanWinkle's child(ren) and then take said child(ren) to her. This officer then reiterated my previous instructions to the defendant regarding his continued association with Ms. VanWinkle. When asked why he remains in contact with her, Mr. Brock maintained it was due to him getting attached to her child(ren).

This conversation and contact with VanWinkle occurred after the probation officer instructed Defendant on June 25 to avoid contact with VanWinkle.

The Report also noted that if the laboratory confirmed the positive fentanyl result on Defendant's July 15 urine screen, then an addendum would issue.

The Court conducted an initial appearance on the Report pursuant to Rule 32.1 on July 22, 2021, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 1093. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

On August 9, 2021, the USPO issued an Addendum to the Report, which charged two additional violations. Violation #5 charges a Grade C violation of the condition that requires Defendant to refrain from using any controlled substance except as prescribed by a physician. According to the Addendum, on July 31, the USPO received a laboratory confirmation that Defendant's July 15 sample was positive for fentanyl.

3

Also based on the July 15 drug screen, Violation #6 charges a violation of the condition that Defendant not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #6 is a Grade B violation because Defendant's fentanyl use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On August 8, 2021, the Court conducted an initial appearance on the Addendum and a final hearing on all six violation allegations. D.E. 1096. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all six violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report and the United States thus established all six under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's underlying conviction is a Class C felony. This results in a two-year maximum period of incarceration upon revocation pursuant to § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under Section 7B1.1, Defendant's admitted conduct in

Violations #2 and #6 qualify as Grade B violations.  Given Defendant's criminal history category of III (the category at the time of the conviction) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 8 to 14 months.  U.S.S.G. § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  Defendant's conviction for a conspiracy to distribute methamphetamine does not carry a maximum term of supervised release.  18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii).

### III.

At the final hearing, the government requested revocation with eleven months of imprisonment, with six years of supervised release to follow.  The defense requested either long-term inpatient drug treatment or, if that was not possible, revocation with eight months of imprisonment.  The defense agreed the government's requested six years of supervision was "reasonable."

The government's recommendation was in the middle of the eight- to fourteen-month Guidelines Range.  According to the government, somewhat mitigating were the facts that this was Defendants first violation (after seven months of supervision) and that he is stipulating to all six violations.  But Defendant's stipulations were not terribly mitigating because he initially denied fentanyl use and made an excuse, blaming his girlfriend, after the first positive instant test.  The government argued that the number of violations is aggravating, particularly two separate fentanyl positives.  The government argued that the stacking of violations (including the

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

uncharged conduct of failing to report his job loss and change of address) constituted a severe breach of the Court's trust. Defendant appears to have a "reluctance to be supervised" or a "cavalier approach" to supervision.

As to the underlying conviction, the government acknowledged that fentanyl is a different drug from meth. Defendant was using opiates at least part of the time during the conspiracy, but the PSR does not indicate use of heroin or fentanyl. In any event, drug use poses the danger of also returning to trafficking. The government made a point of stating it had no objection to drug treatment after release, but argued that treatment in lieu of revocation was not warranted when there were two separate fentanyl uses that were both initially denied.

The defense emphasized that Defendant had not been able to participate in the RDAP program in prison. Defendant explained that, due to charges in his PSR with unknown dispositions, prison authorities had told him he could not participate in RDAP. The defense argued that Defendant had never received drug addiction treatment, yet he has a serious problem and needs rehab. Defendant cannot pay for it himself.

Defendant addressed the Court. He said he had been a drug user for 38 of his 48 years. He is willing to try to kick the habit if someone will help him.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Although the defense requested inpatient treatment in lieu of revocation, such lenient treatment is not warranted here. Most importantly, defendant was caught using fentanyl twice, and both times he initially denied it. This behavior does not suggest he is sufficiently serious about changing to support the exception to imprisonment.

The Court first considers the nature and circumstances of Defendant's underlying conviction. Defendant participated in a wide-ranging meth distribution conspiracy. He has now committed two new (unindicted) drug-possession felonies. His current lack of stability and drug use raises the concern that he could return to trafficking.

The Court next considers Defendant's history and characteristics and the need for additional training or treatment. As the defense stressed, Defendant has a serious and long-term drug abuse problem. Although Defendant's dishonesty and resistance to supervision do not qualify him for treatment in lieu of imprisonment, Defendant will be evaluated for treatment again upon his release. Defendant has a history of lack of respect for the law that his lengthy federal prison sentence did not correct. Accordingly, the Court finds no reason to go below a mid-Guidelines sentence.

The Court must also consider the need to protect the public and deter future criminal conduct. Because Defendant has a history of both drug addiction and drug trafficking, he

presents a continuing risk to the public that needs to be deterred. The mid-Guidelines recommended sentence addresses this need.

The Guidelines suggest the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is significant because of the multiple violations including lack of candor and resistance to the instructions of the probation officer. Using fentanyl (a very dangerous drug) twice and denying it both times, while also violating other conditions, means the law requires a significant revocation sentence.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. Here, as usual, this factor is addressed by imposing a within-Guidelines sentence.

The Court finds that a sentence in the middle of the Range, eleven months, is appropriate. This sentence addresses the serious breach of the Court's trust and will provide deterrence and protection to the public. Six years of supervision will, as the defense acknowledged, keep Defendant "accountable." He will have access to help with his addiction. The public will also have further protection and Defendant will have greater deterrence with additional supervision. The Court hopes he can do better by avoiding drug culture, being honest with himself about his addiction, and being willing to seek help from Probation.

**V.**

Based upon the foregoing, the Court **RECOMMENDS**:

(1)    That, upon his stipulation, Defendant be found guilty of all six violations in the Report and Addendum.

    (2)    Revocation with a term of imprisonment of eleven months, followed by six years of supervised release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FOURTEEN DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 11th day of August, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge